## THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No. _____

**18 CV 3384**

RINALDO PIERNO

In his fiduciary capacity as co-trustee of the Mauro Alario Trust

    Plaintiff

*Demand for Jury Trial*

FIDELITY BROKERAGE SERVICES, LLC,

    Defendant

## COMPLAINT FOR DECLARATORY JUDGEMENT

Plaintiff, Rinaldo Pierno, pro se, alleges the following for his Complaint against Defendant Fidelity Brokerage Services LLC ("Fidelity"):

### NATURE OF THE ACTION

1. The principal and initial question to be addressed in this action is one concerning jurisdiction. Plaintiff pleads that this action should go forward in Federal District Court, before a jury, under the jurisdiction of the Exchange Act of 1933 and 1934 Section 10b and Rule 10b-5 ("Exchange Act"). The Supreme Court's ruling in *SEC v. Zandford, 535 U.S. 813 (2002)* supports the applicability of section 10b-5 in cases where brokers breach their fiduciary duties, as the Plaintiff alleges Defendant Fidelity has done in this action.

https://www.law.cornell.edu/wex/securities_exchange_act_of_1934

> Section 10b and Rule 10b-5 may also provide a remedy
> for investors who have suffered from broker-dealer conduct
> that does not amount to fraud, but still harms clients who
> entrusted the broker-dealer with funds. Neither the Securities

Act of 1933 nor the Exchange Act directly address behavior by brokers who breach their fiduciary duties, but courts have read in an implied promise of fair and honest dealing by brokers, by the fact of their transacting in securities for clients. Under the "shingle theory," a customer only needs to prove violations of professional duties of fair dealing, rather than intentional misstatements or intent to deceive.

2. Defendant Fidelity relies on a predispute arbitration clause contained in Fidelity's "Customer Agreement."

https://www.fidelity.com/bin-public/060_www_fidelity_com/documents/brokerage-account-customer-agreement.pdf Fidelity imposes mandatory arbitration under the Federal Arbitration Act ("FAA") implemented by Financial Industry Regulatory Authority ("FINRA") under Fidelity's "Customer Agreement."

3. Plaintiff pleads that given FAA's ambiguous and convoluted trajectory of Court decisions, it would be appropriate for the Court in this action to revisit and reexamine the Constitutional issues, particularly previous Court decisions where the FAA statute preempts State common law, **Erie Railroad Company v Tompkins 304 U.S. 64 (1938)** " Yet by limiting federal lawmaking in this way, Erie preserves the integrity of substantive areas of law historically controlled by states, which includes the law of contracts, torts, and property" ( M. Stanford ) and **Bernhardt, 350 U.S. at 203** Arbitration's purported benefits notwithstanding, " ...the nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action." The Court noted several forum-induced disparities, including (1) the lack of a right to a jury trial; (2) arbitrators' comparatively deficient instruction on the law; (3) the potential for summary disposition of cases without the type of explanation required by a court of law; (4) incomplete records of proceedings; and (5) strict limitations on judicial review. Taken together,

these factors led the Court to conclude that "...the change from a court of law to an arbitration panel may make a radical difference in ultimate result. ( Stanford ). **Murray's Lessee v Hoboken Land** 59 US 272 " To properly insulate the judicial power from the political branches, Article III "commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." The component of that guardianship most relevant here is preserving "the integrity of judicial decision making" by preventing the delegation of judicial power to non-Article III bodies. The Supreme Court has long recognized that **Article III prohibits Congress from "withdrawing from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."** This is emphasized in **Stern v Marshall 131 S.Ct. 2609;** But "[w]hen a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." No matter how "mundane" or"glamorous," the Court recently urged, "[t]he Constitution assigns that job . . .to the Judiciary." And yet, the Court has not confronted the obvious tension between this rigid constitutional mandate and its deferential demeanor toward the FAA's monumental delegation of judicial power to arbitral tribunals. **This is all the more troubling given that arbitrators are private tribunals**. (Stanford)

## What Ever Happened to Mediation?

4. In the beginning, voluntary mediation was part and parcel of arbitration:

### New Challenges to Arbitration (1976)

https://digitalcommons.ilr.cornell.edu/cgi/viewcontent.cgi?article=1039&context=conference " The founders of our profession--such men (and I use the term "men" advisedly) as George Taylor, William Leiserson, and Harry Shulman--constantly pointed out that private contract and custom rather than statutes and court

decisions had shaped the principal features of arbitration. The function of the arbitrator was that of **a private judge** interpreting the collective agreement and practices of the parties. **Voluntarism, not compulsion**, was the hallmark of the process."

5. "Modern arbitration doctrine is in desperate need of a limiting principle," so noted legal scholar Matthew Stanford in his treatise *Judicial Resistance : Mandatory Arbitration as Federal Commandeering.* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3072518 and by the same author, *Odd Man Out: A Comparative Critique of the Federal Arbitration Acts Article III Shortcomings*

https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2904390 **The Suspicious Existence of the "Repeat Player Effect" in Mandatory Arbitration of Employment Disputes** ( Ed. Silverman, 2013)

https://www.natlawreview.com/article/suspicious-existence-repeat-player-effect-mandatory-arbitration-employment-disputes   Plaintiff incorporates by reference the cited work of these writers that refer to pertinent case law and critique the FAA and mandatory arbitration.

6. An actual, present and justiciable controversy has arisen between Plaintiff and Fidelity, concerning Plaintiff's right proceed in Court under the jurisdiction of the Exchange Act.

7. Plaintiff alleges inherent Constitutional violations in the procedural elements of the FAA ( the Act itself as written confers no jurisdiction ) and the manner in which it is implemented, is a serious abridgement of plaintiff's Constitutional rights of due process, and due to the fact that the forced arbitration takes place before a private tribunal, the procedure places severe limitations to Plaintiffs right to free speech, in an open and public, judicial forum under the First Amendment, in the presence of a jury. The Agreement constitutes a bad bargain, it is adhesive, unconscionable ( **Discover Bank v Superior Court**) and relegates the plaintiff into a private arbitration forum without a jury where:

8. "The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings...The arbitrators do not have to explain the reason(s) for their award....The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry. ...Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited. (excerpt from Fidelity's predispute clause) In this controversy between the Parties legal issues are raised under New York State common law and equity.

## THE PARTIES

9. Plaintiff, Rinaldo Pierno, is a resident of Kings county, in the State of New York who acts in a fiduciary capacity as co trustee in the Mauro Alario Trust ("Trust ") and manages a portfolio of securities belonging to the Trust; the Trust portfolio is held in a brokerage trust account at Fidelity. Plaintiff also maintains a personal brokerage account in his individual capacity at Fidelity. Plaintiff has relied on the implicit contractual principles of "good faith and fair dealing" between parties under the common law of New York State where a substantial part of the events and omissions giving rise to the claims herein occurred.

10. Defendant Fidelity, upon information and belief, is a limited liability company organized in Delaware with its principal place of business in Boston, Massachusetts. Fidelity is a broker-dealer that is registered with the Securities and Exchange Commission.

## JURISDICTION

11. Jurisdiction is proper in this Court because this litigation arises under federal statute namely the Exchange Act of 1933 and 1934. The Supreme Court's ruling in **SEC v. Zandford, 535 U.S. 813 (2002)** supports the applicability of section 10b-5 in cases where brokers breach their fiduciary duties.

https://www.law.cornell.edu/wex/securities_exchange_act_of_1934

The Court also has jurisdiction over this action under 28 U.S.C. 1331 (Federal question); 28 USC 1332 (The amount in question exceeds $75,000) and 28 U.S.C 2201 (Declaratory Judgment Act)

12. This Court has personal jurisdiction over Fidelity; Fidelity, on information and belief, conducts its business in the State of New York and within this district.

13. The Court may exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC 1367 (a)

14. This Court has subject matter jurisdiction on the Constitutional issues raised in this matter based on the First, Fifth, Seventh, Ninth and Tenth amendments contained in the Bill of Rights.

## VENUE

15. Venue is proper in this district under 28 U.S.C. 1391 (b) Defendant Fidelity conducts business in New York and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

16. A actual case or controversy has arisen between the parties concerning the implicit and explicit powers contained in the Trust document which are given to the plaintiff acting in his fiduciary capacity for the Trust.

## GENERAL ALLEGATIONS

### I. The Mauro Alario Trust and Estate Plan

17. Mauro Alario, the plaintiff's uncle, is an eighty-six year old male who in the year 2015 was diagnosed with Parkinson's disease. It was also determined that he would eventually need long term care because his medical condition would eventually gradually progress and worsen.

18. On or about February 8th 2016, a inter vivos revocable trust, titled The Mauro Alario Trust, was completed and put into effect for the benefit of Mauro. Mauro Alario and Rinaldo Pierno were the named cotrustees administering the Trust. During that same month,

plaintiff opened and funded The Mauro Alario Trust brokerage account for the benefit of Mauro Alario with defendant Fidelity.

19. The contractual text found in Article II of the Trust contains the explicit instruction: "If at any time the then Trustee hereunder determines in their opinion and absolute discretion that the Trustor has become physically or mentally incapacitated (whether or not Trustor has been declared incompetent or mentally ill or in need of a conservator by a court of competent jurisdiction) or for any reason is unable to receive and/or make use of moneys distributable to Trustor, pursuant to paragraph A, the Trustee may apply any amount distributable pursuant to this paragraph A for the benefit of the Trustor instead of making payment to the Trustor until Trustor is again able to manage his affairs....The provisions of this paragraph shall be liberally construed , it being the prime intent of the Trustor that he shall always have ample funds available for his reasonable needs and wants in accordance with his standard of living.

20. The contractual text of the Trust contains and confers explicit power on the Trustees which include broad, omnibus and "self-dealing" powers. Article VIII , page sixteen, of the Trust which contains "Provisions with Respect to the Trustees" explicitly states:

"No person or corporation dealing with the Trustee shall be required to investigate or authenticate the Trustee's authority for entering into any transaction or to see to the application of the proceeds of any Transaction."

## II.    THE PRESENT DISPUTE

21. On February 27, 2018, plaintiff received a telephone communication from Mr. Jerome Burns, an agent of Fidelity, requesting that plaintiff submit an Estate Plan for Mauro Alario, as well as a letter, from plaintiff's attorney, that the Estate Plan allowed for the transfer of funds from the Trust account into plaintiff's individual account, and from the Trust account into plaintiff's personal and individual checking account at HSBC bank.

22.     On that same day of February 27, shortly after plaintiff's conversation with Mr. Burns, plaintiff received an email from Fidelity stating that plaintiff's BillPay service had been canceled. No reason was provided for Fidelity's action. Plaintiff also discovered Fidelity had "restricted and made inaccessible " to the plaintiff both the Mauro Alario Trust brokerage account and plaintiff's individual brokerage account. Both those accounts were essentially frozen. Plaintiff was prevented from withdrawing money, or implementing trades or paying bills or withdrawing dividend checks from both accounts which were essential to Plaintiff for paying home health aides for providing home health care for Mauro Alario. No reasons or justification Fidelity's actions were provided to plaintiff. These actions by Fidelity caused Plaintiff harm and emotional distress. Plaintiff relied on Fidelity's contractual obligation to act in good faith and fair dealing, when plaintiff opened both brokerage accounts.

23.     On March 15, 2018, plaintiff responded in a letter (attached as Exhibit A ) to Plaintiff's Affidavit of Support ) to Mr.Jerome Burns and Mr. Josh Foreman, agents of Fidelity clarifying the reasons for the money transfers between accounts. The letter also pointed out that the Estate Plan for Mauro Alario was submitted to Fidelity on February 8, 2016, in essence, the Estate Plan was the the Mauro Alario inter vivos trust document. Additionally, in the response letter plaintiff contended that the contractual text of the Trust gave the plaintiff omnibus and explicit powers to engage in any and all manner of transactions, including those that would appear to be "self- dealing" for the benefit of Mauro Alario at the trustees discretion following the common law "prudent man" rule.

24.     On April 16, 2018, Plaintiff received a telephone call from Mr. Jerome Burns. Mr. Burns acknowledged that my letter of response was received by Fidelity. When plaintiff inquired as to when plaintiffs access to the accounts would be forthcoming, Mr. Burns replied that Plaintiff had two options; a letter from an attorney, or a Court order to restore full access to the accounts in question.

25. Fidelity has "restricted and made inaccessible" the assets of the Trust and the assets in Plaintiff's individual account without any adequate explanation of what legal authority Fidelity relies upon to do so. Plaintiff Rinaldo Pierno maintains that Fidelity has no legal basis for it actions. Plaintiff alleges that Defendant has made improper decisions regarding the Brokerage accounts in question, drawing the wrong conclusions based on insufficient premises. Plaintiff alleges that Fidelity has acted in a arbitrary and capricious manner. Plaintiff pleads that under the common law of trusts, Plaintiff has no obligation to explain or justify trustee actions regarding the Trust to a third party (Fidelity), that is not a party to the contract of Trust (rule of privity). Fidelity by its action has breached its contractual obligation to act in "good faith and fair dealing" with the Plaintiff. These restrictive actions by Fidelity have, and continues, to cause financial and emotional injury to Plaintiff.

### III. POWERS OF THE TRUSTEE

26. Plaintiff pleads that the actions taken by Plaintiff/Trustee which are in controversy in this court action lie within the prescribed scope and powers of the written and implicit Trust instrument: As Harvard legal scholar, Robert H. Sitkoff, notes : " As trusts have come increasingly to be funded with liquid financial assets that require alert management in the face of swiftly changing financial markets, modern trust law has come to give the trustee broad powers to undertake any type of transaction, subject to the trustee's fiduciary duties. Modern law gives the trustee 'all of the powers over trust property that a legally competent, unmarried individual has with respect to individually owned property'. However, 'in deciding whether and how to exercise the powers of the trusteeship, [the trustee] is subject to and must act in accordance with the [trustee's] fiduciary duties'. "

27. " What has happened, in other words, is that modern trust law has come to substitute empowerment subject to fiduciary obligation for simple disempowerment as the preferred means for safeguarding the beneficiary's interests. The settlor need not spell out with specificity what the trustee should do in all possible future circumstances, an impossible task

given transaction costs and the settlor's lack of clairvoyance. Instead, trust law provides the trustee with expansive default powers of administration, the trustee's exercise of which is subject to review ex post for compliance with the open-ended fiduciary duties of loyalty and prudence." (Robert H.Sitkoff)   https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1962856)

## CLAIMS FOR RELIEF

### CLAIM ONE

**Declaratory Judgement order that this Court retain jurisdiction of this action and allow all issues of facts be presented in a jury trial in this Court of competent jurisdiction .**

28.    Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 27, inclusive.

29.    An actual, present and justiciable controversy has arisen between Plaintiff and Fidelity concerning Plaintiff's right to a jury trial the under the Exchange Act Section 10b and Rule 10b-5, As well as under the First, Fifth, Seventh, Ninth, and Tenth amendments to the U.S. Constitution.

### CLAIM TWO

**Declaratory Judgement that the Common Law Privity rule, as it is applied under New York State law, prevents Fidelity from interfering with the actions of the Trustee in administering the Trust.**

30.    Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 29, inclusive.

31.    Plaintiff is the named Trustee of the Trust, Fidelity is not a party to the Trust; under the rule of privity, Fidelity has no legal right to demand or interfere with the Plaintiff/Trustee.

## CLAIM THREE

**Declaratory Judgement to remedy mandatory and compulsory arbitration and reexamine States rights in regard to the misappropriated preemption power of the FAA over New York State common law.**

32. Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 31, inclusive.

33. Plaintiff, has examined the corrosive aspects of the FAA, in the legal scholarship of Matthew Stanford, cited in this complaint, ***Odd Man Out: A Comparative Critique of the Federal Arbitration Acts Article III Shortcomings***

https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2904390

**Judicial Resistance: Mandatory Arbitration as Federal Commandeering,**

https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3072518

as well as, being aware of the the damage mandatory and forced arbitration has caused in the consumer protection area:

https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf

34. Petitioner incorporates by reference the case law cited in the legal scholarship above, Petitioner respectfully requests, in the interest of Public Policy, that the Court revisit and reexamine the trajectory of the FAA decisions and fashion a corrective remedy. Some scholars have suggested, given the widespread abuse of forced arbitration, that mandatory arbitration be abolished altogether, and allow only voluntary mediation.

https://digitalcommons.ilr.cornell.edu/cgi/viewcontent.cgi?article=1039&context=conference

"A proper conception of the arbitrator's function is basic. **He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept.** He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. He serves their pleasure only, to administer the rule of law established by their collective agreement. They are entitled to demand that, at least on balance, his performance be satisfactory to them, **and they can readily dispense with him if it is not.**"

## CLAIM FOUR

### Negligence

35. Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 34, inclusive.

36. Fidelity knew, or should have known that the Mauro Alario Trust document encompassed the Estate Plan and was in Fidelity's possession in its entirety. Yet, Fidelity kept insisting that Plaintiff produce and forward an Estate Plan for the Mauro Alario Trust.

## CLAIM FIVE

### Breach of Contractual Obligation for Good Faith and Fair Dealing

37. Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 36, inclusive.

38. Plaintiff has relied on the implied obligation on the part of Fidelity to contractually deal with the Plaintiff in Good Faith and Fair Dealing. Fidelity breached its contractual obligation when it restricted access to Plaintiff's brokerage accounts, giving

no legal explanation, and demanding a letter from an attorney on the propriety of Plaintiff's actions. Fidelity's rush to judgement and its mistaken conclusions based upon insufficient premises, financially harmed and continues to harm plaintiff. Fidelity continued to restrict access to the accounts even after plaintiff forwarded a letter of clarification.

## CLAIM SIX

**Tortious Interference with Trustees Administration of the Mauro Alario Trust.**

39. Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 38, inclusive.

40. Fidelity under the Rule Privity found in both English and American common law, has no standing, to demand, to question, to interfere, or restrict the actions of the plaintiff in carrying out his duties as a trustee of the Mauro Alario Trust.

## CLAIM SEVEN

**Declaratory Judgement that Defendant Fidelity, for Reasons Pleaded in Plaintiff's Action, Under the Terms of Defendant's Customer Agreement is Entitled to Voluntary Mediation Only.**

41. Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 40, inclusive.

42. Based on the legal scholarship, and the statistical evidence of the corrosive effect that imposed mandatory arbitration has wrought upon the individual rights of citizens, Plaintiff pleads that mandatory arbitration not be enforced and voluntary mediation be substituted in its place.

## CLAIM EIGHT

**A declaration that Fidelity's predispute claim is unenforceable for contractual breach of good faith and fair dealing and inequitable conduct by Fidelity and its agents.**

43. Plaintiff incorporates by reference the allegation contained in paragraphs 1 through 42, inclusive.

44. Plaintiff alleges that Fidelity by it actions, and under the circumstances alleged in this action, Defendant has without justification to the Plaintiff, "restricted and made inaccessible," the assets of the brokerage accounts cited, and by its action, has breached its contractual obligation of acting in good faith and fair dealing with Plaintiff; and furthermore, by it's inequitable conduct , nullified its predispute clause contained in its customer agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Rinaldo Pierno, respectfully requests that the Court:

45. Enter judgement according to the declaratory relief sought;

46. Award Plaintiff compensatory damages and costs in this action.

47. Enter such other further relief in which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on all issues so triable.

Dated: April 18, 2018

By: *[signature: Rinaldo Pierno]*

RINALDO PIERNO

Rinaldo Pierno, pro se
101 Clark Street  Apt. 18K
Brooklyn, New York 11201
(917) 915-1717  *phone*
wyclif17@gmail.com

Exhibit A

**Rinaldo B. Pierno**
101 Clark Street
Brooklyn, New York 11201
Phone: 917-915-1717
wyclif17@gmail.com

March 15, 2018

Mr. Jerome Burns
Mr. Josh Foreman
Fidelity Investments
82 Devonshire Street
Boston, MA 02109
Fax 855-828-8424

Ref:   The Mauro Alario Trust    ▇▇▇▇1991
       Rinaldo B. Pierno         ▇▇▇▇5264

Dear Mr. Burns,

This letter in response to our telephone conversation which you initiated on February 27, 2018. It is my understanding from the conversation that you, as an agent of Fidelity Investments had some concerns about the propriety and legality of several financial transactions that occurred in 2018 between the Mauro Alario Trust brokerage account, of which I am co-trustee with Mauro Alario, and my personal brokerage account, and which also involved my checking account at HSBC Bank. Specifically, you raised the question of whether there existed an estate plan for Mauro Alario, and whether the estate plan allowed the transfer of money from the Alario Trust into my personal account.

On the same day of our conversation, both my personal account at Fidelity, referenced above, and the Mauro Alario trust account were frozen. I could not initiate or complete any financial transactions, purchase or sell equities, pay any bills through Fidelity bill pay, nor transfer any sums of money out of those accounts into my checking account at HSBC Bank. No specific reasons were given to me in writing as to why these actions were taken unilaterally by Fidelity, nor was I given an opportunity to explain why those transactions were necessary and took place before these accounts were frozen other than the conversation that we had on the very same day. You requested that I provide you, as an agent of Fidelity, a copy of an estate plan for Mauro Alario which would indicate that I, as a co-trustee of the Mauro Alario Trust, had the power to initiate and complete those transactions in question. After providing me with the fax number

It is is it an ethical social policy that seemingly arbitrarily distinguishes among these different types of diseases? Is it an ethical social policy that provides full coverage for most illnesses — whether chronic or acute — but forces Americans with certain chronic conditions (many of them elders) to become impoverished in order to gain access to the long term care necessary necessitated by their particular type of chronic illness? Is it a surprise that Americans suffering the"wrong type" of chronic illness will want to look for legal ways to preserve assets gained through a lifetime effort, in order to protect themselves from this unfair and seemingly arbitrary social policy?. (page 74.Farr)

As of 2012, the national average cost of private room in a nursing home was $248 per day, or $90,520 per year, and the national average cost of a semiprivate room was $222 per day or $81,000 per year. (page 14, Farr)

The Medicaid laws (and those who speak out against Medicaid planning) have overlooked one indisputable fact: a person does not choose to develop Alzheimer's disease or Parkinson's disease <u>where costs are not paid,</u> over cancer or blood disease or chronic kidney disease were costs are paid. Our healthcare system has become some sort of morbid lottery where by the illness you happen to get will determine whether you go bankrupt or not.... It is the Medicaid program that more often provides the cost of long-term care, but only if the patient is eligible for benefits(that is,considered needy).... Unlike the Medicare program, the Medicaid program is need based, providing benefits only to those patients who demonstrate financial need. Under the Medicaid program you cannot have more than a limited amount of cash or other available assets. If you do, you will be required to hand your hard earned assets over to the state to gain acceptance to nursing home care or any other long teerm care facility.

(Excerpt from **<u>The Medicaid Planning Handbook A Guide to Protecting Your Family's Assets From Catastrophic Nursing Home Costs.</u>** *By Alexander Bove Page 6.)*

*Medicaid also imposes a sixty month "look back" rule on the transfer of assets, before one can qualify for Medicaid.This is dilemma that must be dealt with if one trys to preserve family assets from being confiscated by the state, <u>when a family member is stricken with a disease that is not covered under our current discriminatory health care laws and requires long term care.</u>*

**Legal Strategies to Protect Assets**:

In the Medicaid planning handbook mentioned above, Alexander Bove suggests several strategies to protect family assets. On page 50, Bove points to a critically important legal exemption under the Medicaid rules prohibiting transfers of assets, I quote:

"The rule prohibiting transfers of assets simply prohibits transfers without adequate consideration. In other words, if you get something of equal value in return for the assets you have transferred, you have not violated the (Medicaid qualification) rule, even though the item you received was not a countable asset...." for example, "pre- paying a mortgage, as well as the purchase of a burial account, are such examples, and are considered transfers for full consideration, so no penalty applies." (Bove, page 50.)

**Paying Children or Other Relatives for Services Rendered**
"...a transfer of assets in return for fair consideration is not considered a "disqualifying" transfer. The use of assets to purchase or pay for services should also fall under this category."...."... children (or other relatives) could render services to an applicant and charge for those services. (Bove, page 54,)

In conclusion, I have provided Fidelity Investments with a copy of the estate plan for Mauro Alario, namely the Mauro Alario Trust. The transfers between the trust account and my personal account have been renumeration for services rendered to Mauro Alario. and fall under the articles of the estate plan that allow for compensation enumerated in Article Vlll (C) and self-dealing Article V (G) Article Vll (19) (25) (26 B) (26 B.6); Article Vlll (M) and particularly for the beneficiaries Article lX  (F) No Contest Clause. All of my actions as co-trustee have followed the "prudent man" rule of preserving the assets for the the benefit of Mauro Alario, to pay for 24 hour round- the-clock care in the comfort of home and familar surroundings and to avoid the predatory actions of the Medicaid Boogie Man.

I request an immediate release to the temporary restriction on both of the above referenced accounts. I rely on both of those accounts to pay for Mauro Alario's 24 hour care.

Please see attachments: Attachment A, excerpts from the Mauro Alario Trust, and Attachment B, Medicare Isn't Free; Two letters from Fidelity.

Sincerely yours,

Rinaldo B Pierno